IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMERICAN COMMERCE INSURANCE
COMPANY, et al.,

        Plaintiffs,

                                                    Civ. No. 01-535 MV/WWD

vs.

PHILLIP BACHICHA, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff American Commerce Insurance Company's ("ACIC") Motion for Summary Judgment, filed February 1, 2002 **[Doc. No. 30]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that ACIC's motion is not well-taken and will be **DENIED.**

## BACKGROUND

Phillip Bachicha ("Phillip"), the son of Frank Bachicha, Jr. and Mary Bachicha, was involved in an automobile accident (the "Accident") on April 14, 1994. At that time, an automobile insurance policy (the "Policy") was in effect that had been issued by ACIC to Mr. and Mrs. Bachica as named insureds. The Policy provided underinsured motorist coverage for the named insureds and "any 'family member.'" The Policy defines "family member" as "a person related to [the insureds] by blood, marriage or adoption who is a resident of [the insureds'] household."

In July 1998, Phillip made a demand on ACIC for underinsured motorist benefits with respect to injuries suffered in the Accident, claiming coverage under the Policy on the ground that he was a resident of his parents' household at the time the Accident occurred. Because ACIC disputes that

Phillip was a resident of his parents' household on April 14, 1994, ACIC brought the instant action, seeking a declaratory judgment that the Policy does not afford underinsured motorist coverage to Phillip. Phillip counterclaimed against ACIC, asserting breaches of contractual, common law and statutory rights. Thereafter, on February 1, 2002, ACIC brought the instant motion for summary judgment on its claim for declaratory relief and in its favor on Phillip's counterclaim. Defendants filed their response in opposition on March 4, 2002. ACIC filed its reply on March 18, 2002.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241

(10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

In support of its motion for summary judgment, ACIC claims that Phillip's own sworn statements establish that, as a matter of law, Phillip was not a resident of his parent's household when the Accident occurred. ACIC points to a deposition of Phillip taken on July 18, 1997, in a personal injury action arising from the Accident. In that deposition, Phillip testified that, as of April 14, 1994, the date of the accident, he was living in a rental house in Albuquerque, commuting from that house to his father's law office in Santa Fe where he had been working as a legal assistant since December 1993. Specifically, Phillip testified that he "was commuting between Santa Fe and Albuquerque because [he] lived in Albuquerque." (7/18/97 Deposition Transcript at pp. 16-17.) When asked whether, as of April 14, 1994, he was "still living in Albuquerque," Phillip replied, "Yes, I was." (7/18/97 Deposition Transcript at p.18.) According to ACIC, this testimony is sufficient to establish as a matter of law that, on April 14, 1994, Phillip resided in Albuquerque while his parents resided

in Santa Fe. ACIC further argues that Phillip's testimony regarding his Albuquerque home eliminates any claim for coverage under the Policy.

Defendants contend that the issue of Phillip's residency at the time of the Accident is an issue of fact. According to Defendants, a jury reasonably could find that Phillip was a resident of his parents' household on April 14, 1994, and thus summary judgment is not appropriate. In support of their contentions, Defendants cite the additional testimony which Phillip provided in an affidavit sworn to on May 17, 1999 (the "Affidavit"), and in a deposition conducted in the instant action on October 9, 2001.

According to his sworn statements, Phillip submitted the Affidavit in order to clarify his answers to questions in his first deposition regarding his residency at the time of the Accident because, at the time of the first deposition, he did not recall or was uncertain about the timing of his move from Albuquerque to Santa Fe in 1994. (*See* Affidavit of Phillip M. Bachicha, sworn to May 17, 1999 ("Aff.") at ¶4.) According to the Affidavit, Phillip had been "living intermittently" at his parents' house since December 1993, eating with his parents "almost every day" and sleeping there "regularly." (Aff. at ¶5(b).) Similarly, in his October 9, 2001 deposition, Phillip testified that, after he began working for his father in December 1993, he "spent more time in Santa Fe than . . . in Albuquerque," and that he kept "a few clothes, toothbrush, shaving kit, that kind of thing" at his parents' house. (10/9/91 Deposition Transcript at p. 54.)

The Affidavit further states that Phillip and his parents had an understanding that he would move into the "guest suite" in their home when the guest who was then living there moved out. According to the Affidavit, as soon as the guest moved out on April 9, 1994, Phillip began moving into the guest suite the things that he had kept in his parents' portion of the house and "some of the

-4-

lighter items" that were in his house in Albuquerque. (Aff. at ¶5(a) & (b).) Also according to the Affidavit, Phillip intended to move "some of the heavier items" from Albuquerque the weekend of April 16, 1994. (Aff. at ¶5(d).) The Affidavit further states that, in March, Phillip gave his Albuquerque landlord notice that he would be vacating his rental house in April, 1994. (Aff. at ¶5(c)). Finally, the Affidavit states that Phillip's "goal" was to vacate his house in Albuquerque "immediately after April 9, 1994," but that the Accident "intervened," and that, as a result of the Accident, Phillip was unable physically to vacate his rental house and complete his move to his parents' house until May 14, 1994. (Aff. at ¶¶5(e) and 6.)

Relying on *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986), ACIC contends that the Court should not consider the Affidavit or Phillip's October 9, 2001 testimony. In *Franks*, the Tenth Circuit recognized "authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Id.* at 1237. The Tenth Circuit explained, however, that "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Id.* The Tenth Circuit noted the following factors relevant to the existence of a sham fact: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.* After considering these factors, the Tenth Circuit concluded that the affidavit at issue "should be disregarded in considering the propriety of summary judgment." *Id.*

ACIC contends that the Affidavit and Phillip's October 9, 2001 deposition testimony constitute an improper attempt to create "sham" factual issues in order to evade summary judgment

based on otherwise undisputed facts. Based on the *Franks* factors, the Court cannot agree. Defendants assert that Phillip's earlier testimony reflects confusion which the Affidavit and the second deposition attempt to explain. There is no reason to believe that, contrary to this assertion, Defendants manufactured Phillip's additional testimony for the sole, improper purpose of creating an issue of fact so as to avoid summary judgment.

ACIC also contends that, even if the additional testimony is considered, this testimony does not create a disputed issue of fact as to whether Phillip was a resident of his parents' household at the time of the Accident. The Court agrees that, taking all of the testimony into consideration, the material facts are not in dispute. Rather, the dispute is whether the totality of the evidence as set forth in Phillip's testimony is sufficient to permit this Court to rule, as a matter of law, that Phillip was not a resident of his parents' household at the time of the Accident.

In several other jurisdictions, if there are no material facts in dispute, and "all that remains to be decided is whether the *competing* circumstantial evidence *not in dispute* is sufficient to permit a definitive ruling under the governing residency criteria," the determination of residency "becomes a pure question of law for the court." *Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 486-87 (1st Cir. 1992) (emphasis in original); *see, e.g., State Farm Fire & Casualty Co. v. Estate of Lazio*, 822 F. Supp. 660 (N.D. Cal. 1993) (holding that summary judgment was appropriate and court could decide whether defendant was resident of parents' household because, although conflicting inferences might be drawn from some evidence before court, facts themselves were undisputed and only question was legal effect of facts); (*Stadelmann v. Glen Falls Ins. Co.*, 5 Mich. App. 536, 147 N.W.2d 460 (Ct. App. Mich. 1967) (holding that, the facts being undisputed, the question of whether plaintiff was a resident of her brother's household is one of law). Under this framework, the Court would be entitled

to weigh all of the competing, undisputed circumstantial evidence and enter summary judgment if it found that the applicable residency criteria were not met. *See Blanchard*, 958 F.2d at 487.

This, however, is not the framework in our jurisdiction. The Tenth Circuit has expressly held that "the words 'resident of the same household' as contained in an insurance policy do not constitute a term of art which would dictate a particularized legal inference to be drawn from family relationships." *Hardesty v. State Farm Mutual Auto. Ins. Co.*, 382 F.2d 564, 565 (10th Cir. 1967) (citing *Aetna Casualty & Surety Co. of Hartford, Conn. v. Means*, 382 F.2d 26, 28 (10th Cir. 1967)). Thus, even in the absence of a material factual dispute, "the question as to the inferences to be drawn present[s] a fact issue." *State Farm Mutual Auto. Ins. Co. v. Holloway*, 423 F.2d 1281, 1283 (10th Cir. 1970). Accordingly, in this jurisdiction, "[t]he function of the court remains . . . to submit to the jury consideration of evidentiary facts from which different permissible inferences may be drawn." *Hardesty*, 382 F.2d at 565. Summary judgment herein thus is precluded unless no reasonable trier of fact could infer "from the 'totality of the circumstances' revealed by the undisputed evidence" that Phillip was a resident of his parents' household at the time of the Accident. *Blanchard*, 958 F.2d at 488.

This Court has found no precedent in New Mexico or Tenth Circuit case law setting forth the relevant criteria for determining whether a person is a resident of an insured's household and thus is covered by the insured's insurance policy. In the context of determining an undocumented alien's eligibility for medical assistance under a state statute, the New Mexico Court of Appeals defined "'residence' [as] the place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; the house where one's home is; a dwelling house." *Perez v. Health and Social Services*, 91 N.M. 334, 337 (Ct. App. 1977), *cert. denied*, 91 N.M. 491 (S. Ct. 1978). The

Court of Appeals further set forth the following "guidelines" for determining whether a person is a resident or not:

> The question of whether a person is a resident of one place or another is largely a question of intention, and, where the intention and the acts of the party are in accord with the fact of residence in a given place, there can be no doubt of the fact that such party is a bona fide resident of the place where he intends to and does reside.

*Id.* at 336 (citing *Klutts v. Jones*, 21 N.M. 720, 158 P. 490 (S. Ct. 1916)).

Cases in other jurisdictions suggest that the phrase "resident of an insured's household" as used in insurance policies "has no fixed meaning but varies according to the circumstances of the case." *Pierce v. Aetna Casualty & Surety Co.*, 29 Wash. App. 32, 36, 627 P.2d 152, 154 (Ct. App. 1981); *see also United Services Auto. Assoc. v. Mione*, 34 Colo. App. 448, 451, 528 P.2d 420, 421 (Ct. App. 1974) (holding that the question of whether one may be considered the resident of a household is an issue to be determined by the facts and circumstances of each particular case). The Supreme Court of Virginia explained that, in order to find that a person is a resident of the household of the named insured, findings of a "settled or permanent status" and a "unit of permanent and domestic character" are necessary. *Allstate Ins. Co. v. Patterson*, 231 Va. 358, 363, 344 S.E.2d 890, 893 (S. Ct. 1986). The Virginia Supreme Court further noted

> the necessity of regularity as the basis of a person's status vis-a-vis the household of the named insured. Hence, while a person's intention to become a member of a particular household need not be coupled with continuous residence, the intention must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household.

*Id.* The Colorado Court of Appeals has set forth the following factors to be considered in making the residency determination: "the subjective or declared intent of the individual, the relationship between the individual and the members of the household, the existence of a second place of lodging,

-8-

and the relative permanence or transient nature of the individual's residence in the household." *Mione*, 34 Colo. App. at 451, 528 P.2d at 421. The Washington Court of Appeals noted that, in order to remain a resident of a household, "[a] person does not . . . have to remain physically within the household. As long as the person has some regular, permanent attachment to the family household, most courts find that person remains part of the household." *Pierce*, 29 Wash. App. at 36-37, 627 P.2d at 154; *see also Farmers Auto. Ins. Assoc. v. Danforth*, 12 F. Supp.2d 914, 917 (E.D. Wis. 1998) (holding that members of a household are not required to live under the same roof to be considered part of the same household). Finally, several courts have held that a person may be a member of more than one household for insurance purposes. *See, e.g., Danforth*, 12 F. Supp. at 917; *Travelers Ins. Co. v. Mixon*, 118 Ga. App. 31, 33, 162 S.E.2d 830, 831 (Ct. App. 1968).

While this Court has found no New Mexico or Tenth Circuit cases applying these residency criteria or addressing the propriety of summary judgment in circumstances similar to those presented herein, cases in other jurisdiction are instructive. For example, in *Estate of Schwenke v. Becktold*, 979 F.2d 855, 1992 WL 344929 (9th Cir. 1992) (unpublished opinion), the plaintiff, who had been injured in an automobile accident, sought a declaratory judgment that the driver of the automobile, John Becktold, was covered by his parents' insurance policy. Becktold had been living with his parents in Billings, Montana when he graduated from college in 1982. Following graduation, he worked for his father and lived with his parents until 1985, although he was not listed as a dependent on his parents' income tax returns after 1982. From 1985 until 1989, he stayed with various friends for periods of time and at his parents' house. During this period, Becktold did not have a key to or a room at his parents' house, and he was responsible for his own bills. In 1989, Becktold began working as a ranch hand in Winnett, Montana. He opened a post office box in Winnett and

transferred all of his property to the ranch. After the accident, Becktold listed his Winnett address on the emergency room form. He recuperated from the accident at both his parents' house and with friends. Becktold testified at his first deposition that his parents' house was his residence, and disclaimed having any other permanent residence. At a second deposition, however, Becktold repudiated his earlier testimony and testified that he had been primarily living with friends since 1982 and only occasionally stayed with his parents.

The district court entered summary judgment for the insurer, holding that no material issue of fact existed as to whether Becktold was a resident of his parents' home, and thus was not covered by his parents' policy. The Ninth Circuit reversed, holding:

> Although the factors suggesting that Becktold had abandoned his residence with his parents are weighty, there remains a genuine issue of material fact as to whether he was a resident at the relevant time. Becktold may have been mistaken, confused or lying in one of his depositions, but the district court had no power to decide which one, or make findings of fact resolving the credibility issue and deciding which story was true on summary judgment.

*Id.* at \*\*3.

Similarly, in *Blanchard*, *supra*, the plaintiff brought an action under a homeowner's insurance policy which defined the term "insured" as including any family member who is a "resident" of the insured premises. The insurance policy was issued to James and Ann Brown. Their son, Paul, shot the plaintiff with a pellet gun, causing his injury. In November 1986, following a disagreement, Paul moved out of his parents' home and moved into a room rented from a friend. Over the next ten months, he maintained regular contacts with the family home, continuing to keep clothing and other personal belongings in the bedroom that had been his. He used his parents' home address on his driver's license, car registration and tax returns, received some mail there, and retained a key. He

visited his parents at least twice a week to help with household chores and for family meals, and remained overnight on Christmas Eve of 1986. The accident occurred in August 1987, during a trip to his parents' house. Three weeks later, Paul moved into an apartment he shared with his girlfriend. In his deposition, Paul disavowed any intention to live with his parents after November 1986.

The insurance company moved for summary judgment on the ground that Paul was not a resident of his parents' home in August 1987. The district court granted the motion, relying on Paul's deposition testimony. The First Circuit reversed, explaining that "Paul's deposition testimony as to his subjective intent was not entitled to be credited in favor of either party for summary judgment purposes." 958 F.2d at 491. Additionally, the First Circuit stated that the undisputed evidence permitted but did not require an inference that Paul had permanently abandoned residence in his parents' household, and that the district court had improperly discounted evidence to support "another, and no less reasonable, inference . . . that [Paul] continued to regard the Brown family household as his primary residence after moving into the rented room in November 1986." *Id.* at 493. Accordingly, the First Circuit held that, "although the result reached by the district court [was] an eminently reasonable one, . . . summary judgment for either party would entail impermissible factfinding." *Id.* at 494.

Additionally, in *Danforth*, *supra*, the plaintiff insurance company sought a declaratory judgment that it had no obligation to pay uninsured motorist benefits to Gerald Danforth, on behalf of the estate of his son, Thomas Danforth, because Thomas was not an insured under the insurance policy issued to Gerald by the plaintiffs. Thomas was killed in November 1996 while riding as a passenger in an uninsured vehicle. Thomas's parents, Gerald and Rose Mary, had been divorced in 1992. Pursuant to their divorce degree, Rose Mary was Thomas's primary residential and custodial

-11-

parent, and Gerald was his secondary residential parent. Gerald paid child support to Rose Mary until Thomas's death. At the time of the accident, Gerald was living on the Oneida Indian Reservation in Oneida, Wisconsin. The accident report and the death certificate identify Thomas's address as his mother's address in Jacksonville, Florida. At the time of the accident, Thomas was on probation in Florida in connection with a conviction for car theft. Under the terms of his probation, Thomas was prohibited from living in Wisconsin. Gerald was in the process of attempting to transfer Thomas's probation to Wisconsin. Thomas then was living in an apartment in Jacksonville, Florida on a temporary basis as a result of his participation in a juvenile rehabilitation program. Thomas had visited his father in May or June of 1996, and again in August of 1996, after Rose Mary told Gerald that Thomas could no longer stay with her because he was out of control. The parties disputed whether Thomas and his parents intended for him to live with his father on a permanent basis or whether his last trip in August was merely a visit.

The plaintiff moved for summary judgment, arguing that the undisputed facts demonstrated that Thomas did not reside in Gerald's household, but was merely a visitor. The court found that "the issue of Gerald's intent with respect to Thomas' living situation [was] material to the court's determination of residency notwithstanding the fact that at the time of his death Thomas could not legally reside with his father." 12 F. Supp.2d at 918. The court further found that, although the facts were undisputed, "a genuine issue exist[ed] with respect to whether Thomas and his parents actually intended that he live with his father on a permanent basis." *Id.* Accordingly, the court denied the plaintiff's motion for summary judgment.[1]

---

[1] *See also Cicciarella v. Amica Mutual Ins. Co.*, 66 F.3d 764 (5th Cir. 1995) (holding that material issue of fact existed as to whether mother who resided in dwelling in which insureds resided intermittently for a total of sixty days a year was a resident of the insureds' household

Based upon the decisions by other courts setting forth the criteria for determining residency for insurance purposes and addressing the propriety of summary judgment in factual circumstances similar to those present here, the Court is constrained to find that the undisputed evidence permits a reasonable inference that Phillip was a resident of his parents' household at the time of the Accident. While Phillip testified at his first deposition that he was living in Albuquerque on April 14, 1994, the date of the Accident, he later testified that he was unsure of the timing of his move to Santa Fe, and that he moved several of his belongings into his parents' house on April 9, 1994. There is also testimony that Phillip maintained regular contact with his parents' household since at least 1993. In the Affidavit and in testimony elicited at Phillip's second deposition, Phillip alleged that he spent more time at his parents' house than at his own, maintained a bedroom there and kept his belongings there. From this evidence, a reasonable fact finder could infer that, at the time of the Accident, Phillip regarded his parents' household as his primary residence, and that he and his parents intended for Phillip to live there on a permanent basis. At the summary judgment stage, the Court is not entitled to decide which version of Phillip's testimony was true, credit deposition testimony in favor of either party or discount evidence that supports the non-moving party's position. As the Court would be

---

within meaning of insurance policy; summary judgment in insurer's favor thus was precluded); *State Farm Mutual Auto. Ins. Co. v. Elkins*, 52 Cal. App.3d 534, 125 Cal. Rptr. 139 (Ct. App. 1975) (holding that evidence was sufficient to support trial court's finding that insured's daughter was a resident of insured's household within meaning of insurance policy, where daughter was "bodily present" in her parents' house in that she frequently took meals there, maintained a bedroom there and occasionally spent the night, and had an intention to continue to dwell in her parents' house); *Travelers Ins. Co. v. Mixon*, 118 Ga. App. 31, 162 S.E.2d 830 (Ct. App. 1968) (holding that trial court did not err in overruling insurer's motion for judgment notwithstanding verdict because evidence sustained finding that deceased nineteen year old son of named insured, who had graduated from high school and was working and living in another town to save money for college but who spent nearly every weekend at insured's house, was a resident of the insured's household within meaning of insurance policy).

required to engage in impermissible fact finding in order to grant summary judgment, ACIC's motion must be denied.

## CONCLUSION

The undisputed evidence herein permits a reasonable inference that Phillip was a resident of his parents' household at the time of the Accident. The question of the permissible inferences to be drawn from the undisputed evidence presents a fact issue which must be submitted to the jury. Accordingly, summary judgment in favor of ACIC is precluded.

**IT IS THEREFORE ORDERED** that ACIC's Motion for Summary Judgment **[Doc. No. 30]** is **DENIED**.

**DATED** this 9th day of April, 2003.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff ACIC:
James C. Ritchie

Attorney for Defendants:
Steven C. Henry

Frank Bachicha, Jr.
Defendant *Pro Se*